O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARACELI R. BARRIOS,                     )   NO. CV 07-04988-MAN
                                        )
                Plaintiff,              )
                                        )   MEMORANDUM OPINION
        v.                              )
                                        )   AND ORDER
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                Defendant.              )
_____)

    Plaintiff filed a Complaint on August 9, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
Plaintiff's application for a period of disability ("POD"), disability
insurance benefits ("DIB"), and supplemental security income ("SSI").
The parties filed a Joint Stipulation on April 1, 2008, in which:
plaintiff seeks an order reversing the Commissioner's decision and
awarding benefits or, in the alternative, remanding the matter for the
correction of legal errors and factual deficiencies; and defendant seeks
an order affirming the Commissioner's decision.  On June 18, 2008, the
parties consented to proceed before the undersigned United States
Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The Court has taken

the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS AND DECISION

On April 12, 2005, plaintiff filed applications for a POD, DIB, and SSI. (Administrative Record ("A.R.") 47, 142.) Plaintiff alleges an inability to work since August 11, 2004, due to lumbar disc disease at L5-S1 and pain in her feet, knees, back, and hands. (A.R. 57.) She has past relevant work experience as a sewing machine operator.[1] (A.R. 58.)

The Commissioner denied plaintiff's application initially, and on July 20, 2005, plaintiff requested a hearing on her claim. (A.R. 38, 145.) On May 11, 2006, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge William C. Thompson, Jr. ("ALJ"). (A.R. 157-174.) On August 25, 2006, the ALJ denied plaintiff's claim, and the Appeals Counsel subsequently denied plaintiff's request for review of the ALJ's decision. (A.R. 20-27, 5-7.)

In his written decision, the ALJ found that plaintiff, who has a second grade education obtained in Mexico and was 58 years old at the time of the hearing, has not engaged in substantial gainful activity since August 11, 2004. (A.R. 26.) The ALJ determined that plaintiff suffers from severe osteopenia of the spine, but she does not have any impairment or combination of impairments that meet or medically equal

---

[1]   Plaintiff worked consistently as a furniture upholstery sewing machine operator from February 1978, through August 2004. (A.R. 63, 164.)

one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (A.R. 26-27.) The ALJ further found that plaintiff has the residual functional capacity to perform a full range of light work, and her subjective statements regarding her pain and other symptoms were not fully credible. (A.R. 27.) Accordingly, the ALJ found that plaintiff was not disabled at any time on or before the date of his decision.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical

3

testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

**I.   The ALJ's Finding Regarding The Credibility Of Plaintiff's Claimed Pain Symptoms And Limitations Is Reversed.**

Plaintiff alleges that the ALJ erred in his consideration of plaintiff's subjective symptom testimony. (Joint Stipulation ("Joint Stip.") at 5.)  For the reasons set forth below, the Court agrees.

Once a disability claimant produces objective evidence of an underlying physical impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the

4

severity of the symptoms must be considered.  Moisa v. Barnhart, 367
F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345
(9th Cir. 2001)(en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a)
(explaining how pain and other symptoms are evaluated).  "[U]nless an
ALJ makes a finding of malingering based on affirmative evidence
thereof, he or she may only find an applicant not credible by making
specific findings as to credibility and stating clear and convincing
reasons for each."  Robbins, 466 F.3d at 883.  Further, an ALJ may not
rely solely on the absence of objective medical evidence supporting the
degree of pain alleged as a basis for finding that a plaintiff's
testimony regarding subjective symptoms is not credible.  Fair v. Bowen,
885 F.2d 597, 601-02 (9th Cir. 1989); Stewart v. Sullivan, 881 F.2d 740,
743-44 (9th Cir. 1989).


     Both in her filings with the Commissioner and in her testimony,
plaintiff described various subjective symptoms from which she claims to
suffer.  Plaintiff testified that she stopped working due to pain in her
legs, knees, lower back, waist area, both wrists, and knuckles.  (A.R.
165-66, 169.)  She testified that, because of the pain, she had
difficulty working the pedals on the sewing machine and could not lift
the furniture upholstery material into the machine to sew it.  (A.R.
166.)  Plaintiff testified that the pain started in her back, then
moved to her knees, and then to her whole body.  (A.R. 170.)  Plaintiff
stated that she wears a back brace and uses her husband's extra cane to
relieve her pain.  (A.R. 71.)  She testified that she does a "little"
housework, washes dishes, and makes the bed, but she is unable to sweep
or mop due to back pain and must rest between chores.  (A.R. 168, 171.)
Plaintiff testified that she cooks in the morning and afternoon, but her

daughter helps cook the evening meal, because plaintiff becomes tired. (A.R. 168.)  Plaintiff testified that she shops for groceries with her daughter, because plaintiff is unable to lift objects such as a gallon of milk or orange juice due to hand pain.  (A.R. 169.)  Finally, plaintiff testified that she can sit for up to two to three hours at a time, stand for up to one hour at a time, and cannot lift anything in excess of ten pounds.  (A.R. 171.)

In his written decision, the ALJ found that plaintiff suffers from severe osteopenia of the spine, a medically determinable impairment that reasonably could cause the subjective pain symptoms and attendant limitations about which plaintiff complains.  (A.R. 21.)  Based on objective medical evidence, *i.e.*, x-rays (three views), plaintiff's treating physician, Louis Bascoy, M.D., diagnosed plaintiff with "narrowing disc space L5S1, LE Radiculopathy." (A.R. 97.)  However, the ALJ rejected plaintiff's testimony regarding the nature and extent of her pain, setting forth the following five reasons for doing so:  (1) although plaintiff has been noted to use a cane and a back brace at times, there is no indication that these devices were prescribed by a physician, and the consultative examiner noted that plaintiff did not appear to have difficulty ambulating without them; (2) plaintiff's pain is relieved by medication, and she testified that she did not experience any side effects of her medication; (3) plaintiff admitted that she is able to carry 20 pounds; (4) plaintiff's "limited effort" at the consultative examination damaged her credibility; and (5) examinations of plaintiff's extremities and back were normal.  (A.R. 25-26.)  When examined in the light of the record as a whole, these reasons do not withstand scrutiny.

6

First, whether or not the back brace and cane plaintiff uses to relieve her pain were prescribed by a physican is of no moment.  At the hearing, the ALJ failed to ask plaintiff any questions regarding her use of the back brace and cane, much less ask whether they were prescribed by a physician.   If the ALJ believed that plaintiff's credibility rested, at least in part, on whether a doctor had prescribed these devices, then the ALJ should have asked question(s) and/or sought documentation to determine whether her physician recommended or prescribed the use of such devices.  The consultative examiner, Timothy K. Ross, M.D., somewhat inconsistently observed that plaintiff: "displays no apparent difficulty [ambulating] without the use of the cane"; and "ambulates with a slow, inconsistent antalgic gait" even with the use of a cane.  (A.R. 101.)   In addition, in the "Observations" section of the April 12, 2005 Disability Report, the Social Security Administration's interviewer reported that plaintiff has difficulty standing and walking, and she "walks slowly with the aid of a cane. [I]t does not appear that she would be able to get around without it[.]" (A.R. 55.)  Thus, the ALJ's rejection of plaintiff's credibility on this basis is not convincing.

The ALJ's second reason for rejecting plaintiff's subjective symptom testimony -- that plaintiff's pain is relieved with medication and she denied any side effects at the hearing – is not a convincing basis upon which to reject plaintiff's testimony.  (A.R. 25.)   While plaintiff, who testified at the hearing with the aid of an interpreter, did not emphasize the side effects from her medications, the record nonetheless supports their existence.  For example, in the May 9, 2005 Pain Questionnaire, plaintiff states that she takes Ibuprofen,

7

Neurontin, and Arthrotec to manage her pain, and while her pain is relieved within "about a[n] hour" after taking the medication, plaintiff experiences "upset stomach, head aches, vomiting, and dizziness." (A.R. 70-71.) In addition, on January 25, 2006, plaintiff reported to her physician that she was experiencing "dizziness" and "headache[s]." (A.R. 125.) Plaintiff's apparently honest testimony regarding the relative effectiveness of her pain medication is not a convincing reason to reject plaintiff's credibility.

Third, the ALJ concluded that plaintiff "has the residual functional capacity to perform a full range of light work," because plaintiff "herself admitted that she is able to carry 20 pounds, which is consistent with a light residual functional capacity." (A.R. 25, 27.) However, plaintiff never stated that she is able to lift and carry 20 pounds *occasionally or one-third of the workday, as is required for light work. See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Rather, in the May 2005 Exertional Daily Activities Questionnaire, plaintiff stated she is not able to carry anything more than "about 20 lbs." (A.R. 74.) In this same Questionnaire, plaintiff states that she "really do[es]n't lift things up. The only thing [she] can think of is the bathroom tray." (*Id.*) At the hearing, plaintiff testified that she is unable to lift "heavy objects like a gallon of milk or the orange juice." (A.R. 169.) Thus, the ALJ's use of plaintiff's Questionnaire response to support the conclusion that plaintiff can perform "a full range of light work" borders on a mischaracterization of the record, is not based on substantial evidence, and does not constitute a clear and convincing reason to reject plaintiff's pain testimony.

8

Fourth, the ALJ asserts that plaintiff's "limited effort" at the consultative examination and positive Waddell's signs damage her credibility. (A.R. 26.)  This reason, like the others discussed above, rests on a strawman, because Dr. Ross noted "limited effort" with respect to range of motion testing, which reasonably could have been due to pain, rather than attributable to malingering, as the ALJ insinuates. Dr. Ross stated that, while "[l]imited effort is rendered on range of motion testing," "[t]here [was] marked tenderness noted in the mid and lower lumbar spine and the bilateral paraspinal muscles," and, objectively speaking, plaintiff's "lumbosacral spine series reveal[ed] diffuse osteopenia." (A.R. 102.)  Further, the ALJ's assertion that "Waddell's signs were positive" as support for his rejection of plaintiff's credibility is refuted by the Commissioner's concession that Waddell's signs do "*not signify malingering*." (Joint Stip. at 23 n.6, citing *Waddell's signs*, from Answer.com, at http://www.answers.com/topic/waddell-s-signs?cat=health)(emphasis added.)  Thus, this rationale is also not convincing.

Finally, the ALJ's assertion that "on numerous occasions [plaintiff's] physician noted that examination of her extremities and back were normal" rests on a selective reading of the medical record. (A.R. 26.) While a review of the record as a whole reveals some normal evaluations, Dr. Bascoy's treatment notes and records from August 11, 2004, through May 2, 2005, contain an objective diagnosis of, and multiple references to, narrowing disc space at L5-S1, lumbar disc disease, and lower extremity radiculopathy. (A.R. 87-91, 93, 96-97.) *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(an ALJ is not permitted to reach his conclusion first and then select evidence to

justify it "by ignoring competent evidence in the record that suggests an opposite result.")  The ALJ erred by requiring plaintiff to adduce medical evidence sufficient to corroborate the severity of her alleged pain and other symptoms.  *See* <u>Bunnell</u>, 947 F.2d at 346.  It is well-settled that an ALJ may not discredit a claimant's subjective claims of disabling pain for the sole reason that the alleged degree of pain is not fully supported by objective medical evidence.  *See* <u>Fair</u>, 885 F.2d at 601-02; <u>Stewart</u>, 881 F.2d at 743-44.  Indeed, in <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit stated explicitly that excess pain, by definition, is "pain that is not supported by objective medical findings."

Accordingly, as there was no other clear and convincing reason to find plaintiff's testimony of disabling pain not credible, the ALJ erroneously discredited that testimony for the sole reason that plaintiff's degree of pain was not fully substantiated by the objective medical evidence.

**II.  <u>Reversal And Remand For The Payment Of Benefits Is Appropriate</u>.**

As indicated above, the Court has found that the ALJ erred in rejecting plaintiff's testimony regarding her pain and limitations, without setting forth clear and convincing reasons for doing so.  The Court concludes, however, that there is no reason to remand this case for further administrative proceedings.

In the Ninth Circuit, courts have the discretion to "credit as true" the testimony of claimants when the ALJ has failed to provide

legally sufficient reasons for rejecting the same. *See, e.g.,* <u>Benecke</u> <u>v. Barnhart</u>, 379 F.3d 587, 594 (9th Cir. 2004); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000); <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989). Specifically, in <u>Varney v. Sec'y of Health and Human</u> <u>Servs.</u>, 859 F.2d 1396, 1401 (9th Cir. 1988), the Ninth Circuit stated that:

> [W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will follow the Eleventh Circuit's practice and take that testimony to be established as true.

*Id.* That principle governs here.

If plaintiff's pain testimony is credited as true, which the Court believes is appropriate under the circumstances, the record shows that plaintiff is disabled. At the Commissioner's request, a vocational expert ("VE") testified at the May 2006 hearing. The VE testified that, if plaintiff's testimony is credited as true, plaintiff could not perform her past relevant work as a sewing machine operator and lacks transferable skills that would enable her to perform other sedentary

11

occupations.[2]   (A.R. 173-74.)

Thus, the Court finds that plaintiff was disabled throughout the relevant period, and reversal and remand for an award of benefits is warranted.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision is REVERSED, and this case is remanded to the Commissioner for

---

[2]   Specifically, the VE, Freeman Leeth, testified in response to the questions of plaintiff's counsel as follows:

Q:   Mr. Leeth, if someone was limited to sedentary work, would there be any transferable skills from the sewing machine operator job that would allow them to perform -- well, first of all let me ask you if someone is limited to sedentary work could they perform the job of sewing machine operator?  In this particular industry –

A:   Not, not –

Q:   Let me be a little bit more specific.  Meaning they didn't have the ability to lift and carry 20 pounds occasionally or 10 pounds frequently.  They had the ability to sit during the day during that period of time but not carry the weight.

A:   For, for the job that [plaintiff] specifically did, she could not.

Q:   Okay.  Are there sedentary sewing machine operators or are there any transferable skills to other sewing machine operator jobs she could perform at the sedentary level?

A:   The[re] would not be because of the sitting.  The[re] would not be.

Q:   Are there any transferable skills to any sedentary occupations?

A:   No.

(A.R. 173-74.)

the payment of benefits to plaintiff.   Judgment shall be entered in favor of plaintiff, and this action shall be dismissed with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 17, 2009

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

13